UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*In re: Nexium (Esomeprazole Magnesium) Antitrust Litigation*

MDL No. 2409 pending in Massachusetts

Civil Action No. 1:12-md-02409-WGY (D. Mass.)

Miscellaneous Action No.

**MEMORANDUM IN SUPPORT OF TIMOTHY C. HESTER'S
MOTION TO QUASH SUBPOENA TO APPEAR AND TESTIFY AT TRIAL**

Timothy C. Hester, a non-party and attorney at Covington & Burling, moves to quash a subpoena served on him by Plaintiffs on August 27, 2014. *See* Ex. 1. The subpoena calls for Mr. Hester to appear at the federal courthouse in Washington, D.C., beginning on October 6, 2014, and, at some unspecified point thereafter to offer live trial testimony via remote video transmission in a proceeding—*In re: Nexium (Esomeprazole Magnesium) Antitrust Litigation*, No. 1:12-md-02409-WGY—taking place contemporaneously in federal court in Boston.[1] Rule of Civil Procedure 43(a) permits such a radical departure from the well-settled conventions of trial practice only when there is "good cause in compelling circumstances." Plaintiffs do not come close to meeting that standard—Plaintiffs already had an opportunity to obtain testimony from Mr. Hester when they deposed him in August 2013; to the extent his videotaped deposition testimony is admissible Plaintiffs may play it at trial.

**BACKGROUND**

The *In re Nexium* MDL consists of class actions and other lawsuits coordinated before Judge William G. Young of the District of Massachusetts. Plaintiffs bring federal and state

---

[1] After the subpoena issued, the district court rescheduled the trial's start date from October 6, 2014 to October 20, 2014.

antitrust claims challenging patent settlements between AstraZeneca and three generic pharmaceutical manufacturers (Ranbaxy, Teva, and Dr. Reddy's) involving the drug Nexium. Nexium is the brand name for esomeprazole magnesium, a "proton-pump inhibitor" that treats gastrointestinal disorders. With Food and Drug Administration's approval, AstraZeneca has marketed esomeprazole magnesium under the name Nexium since 2001. In 2005 and 2006, Ranbaxy, Teva, and Dr. Reddy's sought permission from FDA to market generic versions of Nexium before the expiration of numerous AstraZeneca patents. Pursuant to federal law, Ranbaxy, Teva, and Dr. Reddy's filed certifications asserting that their proposed versions of generic Nexium would not infringe any valid patent for AstraZeneca's brand Nexium. In response, AstraZeneca filed separate patent infringement lawsuits against the generic manufacturers, which the parties later settled. Under the terms of the settlements, Ranbaxy, Teva, and Dr. Reddy's each agreed to accept licensing agreements permitting them to launch their proposed generic Nexium before AstraZeneca's patents expired.

Plaintiffs sued more than four years after the settlements were entered into and approved by the U.S. District Court for the District New Jersey (Pisano, *J.*). They allege the settlements contained impermissible "reverse payments" in violation of federal and state antitrust laws, *see FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2227 (2013), and delayed market entry of generic Nexium, thereby causing them to pay supracompetitive prices for brand Nexium. The Judicial Panel on Multidistrict Litigation transferred the cases to Judge Young in 2012. Trial is now scheduled to begin on October 20, 2014.

Earlier this year, Plaintiffs filed in the MDL Court a Motion for Live Trial Testimony via Contemporaneous Transmission [ECF No. 830]. Plaintiffs sought from Judge Young relief that was unorthodox, to say the least: an order under Rules of Civil Procedure 43(a) and 45

compelling witnesses Plaintiffs desired to call at trial, who they could not subpoena to testify in Boston, to appear at courthouses around the country for live trial testimony by remote video transmission. Plaintiffs sought this relief even though they had secured the videotaped depositions of nineteen witnesses—including Mr. Hester—during discovery, understood that all of the witnesses in the case did not reside within the subpoena power of the trial court, and at no point had suggested those depositions were insufficient for trial or that Plaintiffs had been limited in obtaining deposition testimony from other, or more relevant witnesses. The clerk's notes from the hearing reflect that Judge Young granted the motion. Ex. 2 (7/17/14 Clerk's Notes and Order). Judge Young did not, however, compel the remote testimony of any witnesses or enter a protocol for such testimony submitted by Plaintiffs. Judge Young instead advised the parties from the bench that "the burden is entirely on the plaintiffs. Don't think I'm going to bat in some other court and our video hookups go court to court. The burden is entirely on you." Ex. 3 (7/11/14 Tr. at 26, 30-31).

In advance of the October 6 (now October 20) trial date, Plaintiffs have served more than a dozen non-party subpoenas calling for live trial testimony via remote video transmission at courthouses around the country. Among those served was Mr. Hester, who is a partner at the law firm of Covington & Burling and who represented AstraZeneca in connection with some of the underlying matters in this case. Plaintiffs served Mr. Hester notwithstanding that they deposed him on August 28, 2013, *see* Ex. 4 (Dep. of T. Hester) (cover page), and preserved that deposition on videotape. The subpoena calls for Mr. Hester to appear at the federal courthouse in Washington, D.C. on the first day of trial, and to return there every day until he is called to testify and his remote testimony is complete.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT SHOWN "GOOD CAUSE IN COMPELLING CIRCUMSTANCES" FOR THE EXTRAORDINARY RELIEF THEY SEEK.

Rule of Civil Procedure 45(c)(1) sets forth the manner and circumstances in which parties generally may secure live trial testimony from witnesses. It provides that "a subpoena may command a person to attend a trial . . . only" if the trial court is "within 100 miles of" or, in certain circumstances, "within the state[,] where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1). If a witness is outside the trial court's subpoena power, a party may, in lieu of live testimony, play the videotape (or read the transcript) of the witness's deposition testimony instead. *See* Fed. R. Civ. P. 32(a)(1), (4). These basic rules of practice are applied every day by district courts around the country in both the most simple and complex of cases, and there is no reason they should not apply here. Mr. Hester lives in Maryland and works in D.C.; as such, he indisputably is outside the subpoena power of the District of Massachusetts and cannot be compelled to present live testimony in a trial taking place in that District.

Plaintiffs seek to circumvent these Rules by asking the Court to invoke a narrow (and rarely applied) exception set forth in Rule of Civil Procedure 43(a). Rule 43(a) provides that, "[f]or good cause shown in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." The advisory committee notes to Rule 43 explain what does—and as particularly relevant here, what does not—constitute "good cause in compelling circumstances." "The most persuasive showings . . . are most likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." Fed. R. Civ. P. 43(a) advisory committee notes (1996 amendment). "An unforeseen need for the

4

testimony of a remote witness that arises during trial . . . may [also] establish good cause and compelling circumstances." *Id.* The advisory committee warned expressly that "[o]ther possible justifications for remote transmission must be approached cautiously," *id.*, and that "[a] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in [making the requisite] showing." *Id.*

Here, there are no "*unexpected* reasons" or "*unforeseen* circumstances" that preclude Mr. Hester from appearing at trial in Boston. Far from it. It has never been lost on Plaintiffs that Mr. Hester was a potential witness and one who was outside the subpoena power of the trial court. The witnesses in this case have been known for over a year, and Plaintiffs have known from the outset of this litigation that none of the AstraZeneca Defendants is headquartered in or near Massachusetts and that AstraZeneca's witnesses do not reside in the District of Massachusetts or within 100 miles of the court. *See Eller v. Trans Union, LLC*, 739 F.3d 467, 478 (10th Cir. 2013) (Plaintiff "proffered no 'unexpected reason' for [witness's] absence from trial. . . . [Plaintiff] knew well in advance of trial that [witness] was based in Portland, Oregon, and he could have made arrangements ahead of time for introducing [witness's] testimony, by deposition for instance.").[2]

Plaintiffs accordingly took Mr. Hester's deposition in August 2013, which they preserved on videotape and can play for the jury to the extent it is admissible. Indeed, Plaintiffs already have designated excerpts of Mr. Hester's deposition to be played at trial. *See* Ex. 5 (Pls.' Dep.

---

[2] *Accord Air Turbine Technology, Inc. v. Atlas Copco AB*, 217 F.R.D. 545, 546–47 (S.D. Fla. 2003) (alternatively ruling that Rule 43(a) not satisfied where "Plaintiff has known from the early stages of this case that witnesses from outside of the United States would be testifying about the trial" and "depositions of the witnesses in question have been taken"), *aff'd*, 410 F.3d 701, 714 (Fed. Cir. 2005); *Matovski v. Matovski*, No. 06 Civ. 4259 (PKC), 2007 WL 1575253, at *3 (S.D.N.Y. May 31, 2007) ("The burden to the 8 witnesses has been known to petitioner from the inception of this proceeding. There is nothing 'unexpected' or 'compelling.' The application to have the 8 witnesses testify via contemporaneous transmission is denied.").

Designations of T. Hester). The advisory committee notes to Rule 43 again speak directly to these precise circumstances and express unambiguously a preference for videotaped depositions to remote video transmissions: "Ordinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena. . . . Deposition procedures ensure the opportunity of all parties to be represented while the witness is testifying." Fed. R. Civ. P. 43(a) advisory committee notes (1996 amendment). *See also Garza-Castillo v. Guajardo-Ochoa*, No. 2:10-cv-00359-LDG, 2012 WL 15220, at *1 (D. Nev. Jan. 4, 2012) ("The commentary makes clear that compelling circumstances will generally refer to unexpected circumstances. When the circumstance precluding the in-court testimony of witnesses is expected, deposition (including video deposition) provides the superior means of securing the testimony."); *Matovski*, 2007 WL 1575253, at *2 ("The Notes to Rule 43 describe deposition testimony as 'superior' to contemporaneous transmission.").

That Plaintiffs may prefer live testimony to videotaped testimony or, in hindsight, are unhappy with the deposition they took has no bearing on whether good cause in compelling circumstances exists. *See Union Pac. R.R. v. Beemac Trucking, LLC*, No. 8:11CV8, 2013 WL 6795031, at *1 (D. Neb. Dec. 20, 2013) ("As grounds for remote testimony, Plaintiff asserts that the jury should be able to assess Edling's credibility in a real-time setting. Plaintiff previously took a videotaped deposition of Edling. The deposition testimony is sufficient for trial."). If a mere preference for live testimony satisfied the standard, then the standard would mean nothing at all—remote testimony by live video feed could occur in any case upon any party's election. But Plaintiffs' burden is not so light: "[W]hen the federal rule states a court may permit contemporaneous transmission 'for good cause in compelling circumstances' the rule really

means 'for good cause in compelling circumstances.'" *Niemeyer v. Ford Motor Co.*, No. 2:09-CV-2091 JCM (PAL), 2012 WL 5199145, at *2 (D. Nev. Oct. 18, 2012); *see Roundtree v. Chase Bank USA, N.A.*, No. 13-239 MJP, 2014 WL 2480259, at *2 (W.D. Wash. June 3, 2014) (Rule 43(a) permits contemporaneous transmission "under exceptional circumstances").

Mr. Hester should not be compelled to appear in Washington, D.C. to offer remote video testimony in a Boston trial.

## II. PLAINTIFFS' SUBPOENA OVERLY AND UNNECESSARILY BURDENS THE COURT.

If not quashed, Plaintiffs' subpoena will impose a significant burden on this Court and interrupt its normal course of operations. Instead of simply playing Mr. Hester's videotaped deposition in Boston, Plaintiffs will require a dedicated courtroom with an elaborate setup in this courthouse—equipment for two-way audio-video transmission, cameras, laptops, monitors, phones, and headsets or headphones. A courtroom deputy must be provided and a court reporter procured; additional personnel may be diverted from their typical duties to ensure outsiders do not access the courtroom or interfere with the proceedings. Plaintiffs will require these accommodations in this Court until the questioning of Mr. Hester in their case, whenever in the six-week trial period it may occur, is complete.

And as intrusive and disruptive as this would be if confined to this single case, it would pale in comparison to the potential long-term interruption in the business of this District if Plaintiffs—based on this record—are deemed to satisfy the "good cause in compelling circumstances" standard and testimony by remote video link becomes so easily obtainable by other parties here.

### III. PLAINTIFFS' SUBPOENA UNDULY BURDENS MR. HESTER.

Plaintiffs' subpoena to Mr. Hester fails for an additional reason—it "subjects" him "to undue burden." Fed. R. Civ. P. 45(d)(3)(iv). The subpoena does not specify with any precision the date and time of Mr. Hester's anticipated testimony. It instead requires that he appear at the courthouse at 9:00 a.m. beginning October 6, 2014, and "return every day thereafter" during the anticipated six-week trial until he "is dismissed." Ex. 1. Such an overbroad subpoena is, on its face, unduly burdensome. That undue burden is particularly exacerbated in these circumstances, in which the witness has other, significant responsibilities—Mr. Hester is Chair of Covington & Burling's Management and Executive Committees and maintains an active practice. It is unreasonable, and unfair, that Plaintiffs expect Mr. Hester to drop those responsibilities for an extended period of time and sit in the courthouse here in Washington because Plaintiffs do not want to play his videotaped deposition testimony at trial in Boston.

### **CONCLUSION**

For these reasons, Timothy Hester respectfully requests that the Court quash the subpoena requiring him to appear and testify via remote video transmission.

Dated: September 18, 2014

Respectfully submitted,

*/s/ Dane H. Butswinkas*

Dane H. Butswinkas (DC Bar #425056)
John E. Schmidtlein (DC Bar #441261)
Paul B. Gaffney (DC Bar #440456)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Ph: 202-434-5000
Fax: 202-434-5029
DButswinkas@wc.com
JSchmidtlein@wc.com
PGaffney@wc.com

*Counsel for Timothy C. Hester, AstraZeneca LP, AstraZeneca AB, and Aktiebolaget Hässle*